# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **HENRY G. DENSON, JR.,** | |
| **Claimant,** | |
| v. | **No. 17 C 2220** |
| **NANCY A. BERRYHILL, Acting Commissioner of Social Security,** | **Magistrate Judge Jeffrey T. Gilbert** |
| **Respondent.** | |

## MEMORANDUM OPINION AND ORDER

Claimant Henry G. Denson, Jr. ("Claimant") seeks review of the final decision of Respondent Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 7.] Claimant has filed a memorandum seeking to reverse or remand the Commissioner's decision, which the Court will construe as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. [ECF No. 15.] This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

For the reasons stated below, Claimant's Motion [ECF No. 15] is granted. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

# I. PROCEDURAL HISTORY

Claimant filed his claim for DIB on October 18, 2012, alleging disability beginning August 15, 2008. (R. 29.) The application was denied initially and upon reconsideration, after which Claimant requested an administrative hearing before an administrative law judge ("ALJ"). (*Id.*) On January 23, 2015, Claimant, represented by counsel, appeared and testified at a hearing before ALJ Victoria A. Ferrer. (R. 117–20, 126–53.) During the hearing, however, Claimant became ill and was taken to the hospital by paramedics. (R. 153–54.) On April 9, 2015, the hearing continued, and Claimant, again represented by counsel, resumed giving testimony. (R. 29, 45–47, 53–110.) The ALJ also heard testimony from vocational expert ("VE") Pamela Tucker at the continued hearing. (R. 29.)

On May 22, 2015, the ALJ issued an unfavorable decision denying Claimant's claim for DIB. (R. 26–44.) The opinion followed the five-step evaluation process required by Social Security Regulations ("SSRs").[1] 20 C.F.R. § 404.1520. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since his alleged onset disability date of August 15, 2008 through his date last insured ("DLI"), June 30, 2009. (R. 31.) At step two, the ALJ found that Claimant had the following severe impairments: diabetes mellitus, obesity, a history of asthma, sinus tarsi syndrome of the right foot, capsulitis of the right foot, and tarsal tunnel syndrome of the right foot. (R. 32.) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of

---

[1] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). Although the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

one of the listed impairments in 20 C.F.R. Part 404 Subpart P, Appendix 1. (R. 33.) The ALJ then determined that, through the DLI, Claimant had the residual functional capacity ("RFC")[2] to:

> perform sedentary work . . . except that he could stand and/or walk continuously for 20 minutes at one time; could never climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; would need to avoid concentrated exposure to pulmonary irritants; could occasionally work with hazardous machines with moving, mechanical parts; could never work in high exposed places; and could never operate foot controls on the right foot.

(R. 33.) Based on this RFC, the ALJ found at step four that Claimant was unable to perform any past relevant work. (R. 37–38.) Finally, at step five, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Claimant could have performed through his DLI, such as telephone quotation clerk, circuit board assembler, or document preparer. (R. 38–39.) Because of this determination at step five, the ALJ found that Claimant was not disabled under the Act. (R. 39.) The Appeals Council declined to review the matter on January 20, 2017, making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). Judicial review is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment

---

[2] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

"affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations omitted). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

### III. ANALYSIS

Claimant alleges numerous errors on appeal. Claimant contends that the ALJ (1) failed to properly consider the opinion of Claimant's treating physician; (2) had no medical basis for her RFC determination; and (3) improperly evaluated Claimant's subjective symptom statements. [ECF No. 15, at 8–15; ECF No. 23.] The Court addresses each of these arguments below.

### A. The Treating Physician's Opinion

Claimant first argues that the ALJ improperly rejected the opinion of his treating podiatrist, John Grady, D.P.M.[3] Dr. Grady completed a physical RFC questionnaire in October 2014 in which he recommended certain limitations. (R. 817–21.) At the time Dr. Grady completed the RFC questionnaire, he had been treating Claimant for almost eight years. (R. 677, 817, 821.) The ALJ considered Dr. Grady's opinions, but gave them no weight. (R. 37.) Claimant contends that, by giving no weight to Dr. Grady's opinions, the ALJ violated the "treating physician rule."[4] [ECF No. 15, at 9–11.]

The opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2); *accord Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). A treating physician typically has a better opportunity to judge a claimant's limitations than a nontreating physician. *See Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); *Grindle v. Sullivan*, 774 F. Supp. 1501, 1507–08 (N.D. Ill. 1991). "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Therefore, "[a]n ALJ must offer good reasons for discounting a treating physician's opinion," and "can reject an examining physician's opinion only for reasons supported by substantial evidence in the record." *Id.*; *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations

---

[3] The Commissioner does not dispute that Dr. Grady was Claimant's treating podiatrist. [ECF No. 22, at 3.]

[4] Last year, the Social Security Administration ("SSA") adopted new rules for agency review of disability claims involving the treating physician rule. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017). Because the new rules apply only to disability applications filed on or after March 27, 2017, they are not applicable in this case. *See id.*

omitted).  Even if a treating physician's opinion is not given controlling weight, the ALJ must still determine how much weight to give it.  *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014).

The ALJ appears to have rejected Dr. Grady's opinion primarily based on Dr. Grady's statement "that the earliest date that the description of symptoms and limitations in this questionnaire applied was November 26, 2012," which is over three years after Claimant's DLI. (R. 30, 37.)  Thus, the ALJ reasoned that Dr. Grady's opinion "specifically indicate[d] that the noted [RFC] limitations are not supported prior to the date last insured." (R. 37.)  The Court finds no fault with this reasoning.

To be entitled to DIB, Claimant had to show that he became disabled on or before his DLI, *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012), and the ALJ was tasked with determining Claimant's RFC through his DLI, which was June 30, 2009. (R. 30, 33.)  Dr. Grady stated that the symptoms and functional limitations described in the questionnaire he completed did not apply until, *at the earliest*, November 2012, which is more than three years after Claimant's DLI. (R. 821.)  Thus, Dr. Grady's opinion offers nothing with respect to the symptoms and functional limitations Claimant experienced as of his DLI.

To be clear, the Court is not saying that the existence of symptoms and limitations after a claimant's DLI are necessarily irrelevant to the determination of an appropriate RFC.  If, for example, Dr. Grady had completed the RFC questionnaire and indicated that Claimant suffered from the symptoms and limitations described therein—without specifying an onset date—that opinion potentially may have been relevant to show that Claimant also suffered from those symptoms and limitations at a previous time (and perhaps before the DLI).  *See, e.g.*, *Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984) (noting "that medical evidence from a time subsequent to a certain period is relevant to a determination of a claimant's condition during that

period"). But that is not what happened here. Instead, Dr. Grady unambiguously opined that Claimant did not first suffer from the identified symptoms and functional limitations until November 2012, more than three years after his DLI. Dr. Grady had ample experience treating Claimant and thus was fully qualified to assess when Claimant's symptoms and limitations began, as he had examined Claimant several times from 2006 through 2014, both before and after Claimant's June 2009 DLI. (*See, e.g.*, R. 631–33, 638–56, 658–66, 668–78.) Thus, there can be no inference, based on Dr. Grady's opinion, that Claimant's symptoms and limitations predated November 2012 and, specifically, his June 2009 DLI.

Although Claimant contends that the November 2012 date was "erroneous" [ECF No. 15, at 10], he does not provide any evidentiary support for this contention. To the contrary, after the ALJ's decision, Claimant's counsel specifically sought clarification of Dr. Grady's November 2012 date, asking if it was an error. (R. 851–52.) In response, Dr. Grady made no clarifications or changes to this portion of his opinion. (R. 850.) Thus, on the current record, Dr. Grady's opinion as to a November 2012 onset date must be accepted as an accurate statement of his assessment of Claimant's symptoms and limitations. Claimant's argument to the contrary is rejected.

**B.     The RFC Determination**

Claimant next contends that, by rejecting the opinions of the state agency consultants and Dr. Grady, the ALJ impermissibly "played doctor" and used her lay inferences to formulate Claimant's RFC. [ECF No. 15 at 8–9.] The Court agrees with Claimant.

The ALJ had before her three medical source statements: two disability determination examinations from state agency consultants, and Dr. Grady's physical RFC questionnaire. (R. 36–37, 156–61, 163–69, 817–21.) As discussed above, the ALJ properly rejected the opinion of Dr.

7

Grady. Significantly, however, neither state agency physician offered an opinion as to what limitations should be included in Claimant's RFC, based on a lack of sufficient evidence. (R. 36, 159–60, 166–68.) Thus, the ALJ determined Claimant's RFC based on her review and consideration of Claimant's hearing testimony and various medical records. (R. 34–37.) The question, therefore, is whether this absence of medical opinion evidence to support an RFC determination during the relevant period requires a remand. The Court believes that, in this case, it does.

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see* 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence— including statements from medical sources about what the claimant can still do—as well as "other evidence, such as testimony by the claimant or his friends and family." *Craft*, 539 F.3d at 676; 20 C.F.R. § 404.1545(a)(3).

Under the regulations, an ALJ's RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, at *7. The ALJ must explain how she reached her conclusions about a claimant's physical capabilities and build an "accurate and logical bridge from the evidence to the conclusion." *Berger*, 516 F.3d at 544 (internal quotations omitted); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d

8

345, 352 (7th Cir. 2005). And the ALJ must identify some record basis to support the RFC finding. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). If an ALJ fails to explain and support her RFC conclusions, the "omission in itself is enough to warrant reversal." *Briscoe*, 425 F.3d at 352. Importantly, the ALJ is not allowed to "play doctor" by using her own opinions to fill an evidentiary gap in the record. *See Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003).

Here, without any medical assessments regarding Claimant's physical or mental capabilities during the relevant time period in the record, there was an evidentiary gap. *See McDavid v. Colvin*, No. 15 C 8829, 2017 WL 902877, at *5 (N.D. Ill. Mar. 7, 2017) (finding that once the ALJ rejected all the available RFC determinations made by doctors, "an evidentiary gap in the record" was created). In fact, the ALJ even recognized this when she gave "some weight" to the state agency consultants' determinations "that there was insufficient evidence prior to the date last insured to assess the claimant's functioning." (R. 36.) Thus, in rendering her RFC assessment, the ALJ improperly resorted to her lay opinions to fill this evidentiary gap. *See Hill v. Berryhill*, No. 1:16-CV-00523, 2017 WL 1028150, at *6 (N.D. Ill. Mar. 16, 2017) ("The ALJ relied on a record that lacked a medical opinion assessing Claimant's functional abilities based on her mental and physical limitations. To fill in this gap, the ALJ must have resorted to lay speculation, as there is no medical opinion for her to have relied upon. This was improper.").

The ALJ's discussion of her RFC assessment bears this out. Although the ALJ noted that different limitations from her RFC were meant to accommodate different impairments, she did not explain how all the RFC limitations she formulated were supported by the medical or other evidence. For instance, the ALJ limited Claimant to, among other things, standing and walking

for two hours in an eight-hour day[5] to accommodate the difficulties caused by Claimant's right foot impairments. (R. 35.) But none of the evidence cited by the ALJ supports the notion that Claimant could be on his feet for even that amount of time during the day; indeed, the cited evidence fails to provide any indication as to how long Claimant could stand and walk during the day. (R. 534, 547, 556, 634, 649, 650, 663, 685.) The ALJ's RFC also states that Claimant can "never climb ladders, ropes, or scaffolds" and can "occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl." (R. 33.) According to the ALJ, this reduced capacity for postural activities was meant to accommodate Claimant's asthma, morbid obesity, and diabetes. (R. 35–36.) But, again, none of the evidence cited by the ALJ with respect to these impairments gives any indication as to Claimant's limitations for climbing, stooping, kneeling, crouching, or crawling. (*See* R. 379, 453, 525, 545, 550, 552, 556, 697.) The ALJ crafted RFC limitations to accommodate Claimant's various medical impairments based on what she subjectively believed could accommodate each impairment. This amounts to improperly playing doctor.

Instead of embarking on the RFC assessment herself, as she did, "the ALJ had a duty to conduct an appropriate inquiry to fill" the evidentiary gap created by the lack of medical RFC determinations. *Daniels v. Astrue*, 854 F. Supp. 2d 513, 523 (N.D. Ill. 2012). Although the Court recognizes that Claimant bears the burden of proof to demonstrate he is disabled, the ALJ also has a duty to fully and fairly develop the record. *Nelms*, 553 F.3d at 1098. If the ALJ found that the available medical evidence in Claimant's record was insufficient to make an RFC determination, "it was her responsibility to recognize the need for additional medical evaluations." *Scott*, 647 F.3d at 741. The ALJ could have re-contacted Dr. Grady for further information, sent Claimant

---

[5] This standing/walking limitation is reflected by the "sedentary" portion of the ALJ's RFC, as periods of standing or walking should generally total no more than two hours out of an eight-hour workday for sedentary work. SSR 83-10, at *5.

for an independent medical evaluation, or requested that a medical expert testify. *See Skinner v. Astrue*, 478 F.3d 836, 843 (7th Cir. 2007) ("ALJs may contact treating physicians for further information when the information already in the record is 'inadequate' to make a determination of disability[.]"); *Daniels*, 854 F. Supp. 2d at 523 ("[T]he ALJ could have—and must on remand—fill in the evidentiary deficit either by seeking further information from [the claimant's treating physician] or obtaining the opinions of an independent examining physician or a medical expert."). What she could not do, however, was "play doctor" and fill the gap with her own medical determination as to how Claimant's impairments should be accommodated by various functional limitations.

For these reasons, the ALJ failed to build a logical bridge between the evidence and her RFC determination, *Berger*, 516 F.3d at 544, and failed to identify a sufficient record basis for her RFC finding. *See Scott*, 647 F.3d at 740. Thus, the Court finds that a remand is necessary due to the evidentiary deficit created by the lack of relevant RFC determinations from medical professionals in the record. *See Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) (finding remand was necessary after the ALJ created an evidentiary deficit when the ALJ rejected the opinion of the claimant's treating physician and then made an RFC finding without sufficient medical support in the record).

C.     **The Symptom Evaluation**

Finally, Claimant also contends that the ALJ rendered an erroneous symptom determination by improperly dismissing Claimant's subjective complaints and by failing to adequately address Claimant's daily activities. [ECF No. 15, at 11–15.] These contentions touch upon the ALJ's "credibility" determination. The Court agrees with Claimant in this regard.

11

The ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, at *2.[6] Although an ALJ's credibility determination is entitled to special deference, an ALJ still must "build an accurate and logical bridge between the evidence and the result." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (internal quotations omitted). An ALJ's credibility determination only may be upheld if she gives specific reasons for the determination and provides substantial evidence in support of the determination. *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009).

In assessing Claimant's credibility, the ALJ here found that Claimant's "medically determinable impairments could reasonably be expected to cause symptoms" and that Claimant was "credible as to the existence of his impairments." (R. 34, 36.) Nevertheless, the ALJ found that Claimant's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible as they do not prevent him from performing work activities as described herein." (R. 34.) The ALJ later stated that she did not find credible Claimant's "allegations regarding the severity and persistence of his symptoms as well as the functional limitations that they allegedly cause." (R. 36.) Ultimately, "[b]ased on the overall evidence of

---

[6] In 2016, the Commissioner rescinded SSR 96-7p and issued SSR 16-3p, eliminating the use of the term "credibility" from the symptom evaluation process, but clarifying that the factors to be weighed in that process remain the same. *See* SSR 16-3p, 2016 WL 1119029, at *1, *7 (Mar. 16, 2016). Although the ruling makes clear that ALJs "aren't in the business of impeaching claimants' character," it does not alter their duty "to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). The SSA recently clarified that SSR 16-3p only applies when ALJs "make determinations on or after March 28, 2016," and that SSR 96-7p governs cases decided before March 28, 2016. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462-03, 2017 WL 4790249, at n.27 (Oct. 25, 2017). The ALJ issued her opinion on May 22, 2015. (R. 39.) Therefore, contrary to Claimant's argument, the ALJ properly applied SSR 96-7p. Nonetheless, SSR 16-3p will apply on remand. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462-03, at n.27.

record, including the testimony at the hearing," the ALJ found Claimant's "allegations not fully credible." (*Id.*)

As far as the Court can discern, the ALJ's adverse credibility determination rested on two grounds. First, the ALJ believed that while Claimant "testified that his conditions have worsened, his medical records show signs of improvement" and "it is more reasonable to conclude that [Claimant] was in fact exercising and engaging in greater activity than he has alleged being able to perform during the relevant period." (R. 35.) Second, the ALJ relied on Claimant's indication "that he is able to perform a variety of activities of daily living" as "another credibility factor [] considered in reaching" her opinion. (R. 36.) On the record in this case, the Court finds that these reasons are legally insufficient and not supported by substantial evidence, warranting remand on this issue. *See Ghiselli v. Colvin*, 837 F.3d 771, 778–79 (7th Cir. 2016).

To begin, the ALJ supported her assertion that medical records show signs of improvement by citing a cardiology consultation report dated September 23, 2009, which reported that Claimant and his wife had "started to work out exercising." (R. 35, 547.) This report was issued three months after Claimant's DLI. At least one record after the September 2009 report supports Claimant's claim that his conditions had become worse. In January 2011, Dr. Grady reported that Claimant complained of "pain 8/10 when he's off his foot and 10/10 when he's on it, on the lateral aspect of the right foot and the ball of the foot. *It is getting worse*." (R. 647) (emphasis added). Dr. Grady also emphasized that Claimant "definitely need[ed] pain control" (*id.*), which tends to undercut the conclusion that Claimant's impairments were improving.

The ALJ also pointed to a statement in the September 2009 report that Claimant "walks about 2 laps, however, he walks very slowly."[7] (R. 547.) Again, the ALJ never explained how

---

[7] Claimant denied that he reported the activity at issue to his cardiologist, but the ALJ did not find this denial credible. (R. 35.) The Court does not take issue with this credibility finding.

13

walking "about two laps" very slowly is inconsistent with Claimant's testimony during the hearing that he would walk in one- to two-minute intervals for a total of 15 minutes. (R. 128–29.) Lastly, in finding it more reasonable to conclude that Claimant "was in fact exercising and engaging in greater activity than he has alleged being able to perform during the relevant period," the ALJ referred to Claimant's testimony "that he tore his rotator cuff in 2010 while lifting weights." (R. 35.) But the ALJ never explained why Claimant's activity in 2010 would undermine his testimony about his level of activity *during the relevant period*, which ended the prior year, in June 2009. That Claimant injured himself while lifting weights also cuts against the notion that was an activity that Claimant could continue to do at the level he was doing it.

More generally, it is unclear how the ALJ interpreted "work out" and "exercising," as those terms were used in the September 2009 report, and whether this interpretation affected her determination that Claimant was engaging in greater activity than he said he could perform before his DLI. Claimant's testimony during the hearing made clear that he used the terms "working out" and "exercising" to mean light to moderate walking and, perhaps, sit-ups and push-ups at home. (R. 62–63, 128–30); *see also* (R. 34) (ALJ's statement that Claimant "indicated that he was trying to keep himself in shape and was doing light to moderate walking during the relevant period."). And, in fact, the "work out exercising" statement in the September 2009 report is immediately followed by a description of Claimant's walking regimen. (R. 547.) The ALJ's reference to Claimant lifting weights in 2010, however, suggests that the ALJ may have interpreted the "work out exercising" statement differently than Claimant intended, perhaps to refer to activity more strenuous than walking, such as lifting weights. This potential disconnect in interpretations could have created an apparent inconsistency about Claimant's level of activity in the ALJ's mind where

14

none existed. The lack of clarity in the record makes it difficult to understand the ALJ's ambiguous statement that Claimant's medical records show his condition was improving.

The ALJ's second justification for her adverse credibility finding begins and ends with her statement that Claimant had the ability "to perform a variety of activities of daily living." (R. 36.) The ALJ said immediately thereafter that she found Claimant's "allegations not fully credible." (*Id.*) It seems clear from this context that Claimant's daily activities negatively affected the ALJ's credibility assessment. "[A]lthough it is appropriate for an ALJ to consider a claimant's daily activities when evaluating their credibility, this must be done with care," as an ability to perform daily activities "does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) (internal citation omitted).

Absent from the ALJ's discussion here is an explanation as to how Claimant's ability to engage in a variety of activities of daily living undermines his allegations or translates into an ability to perform full-time work. The ALJ did not identify which daily living activities she believed factored into her credibility determination. (R. 36.) The ALJ, therefore, did not consider Claimant's daily activities "with care," *see Roddy*, 705 F.3d at 639, nor did she explain her reasoning consistent with the applicable regulations and Seventh Circuit precedent. *See, e.g.*, SSR 96-7p, at *4 ("The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"); *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) ("[T]he ALJ must explain her [credibility] decision in such a way that allows us to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record.").

In sum, the ALJ failed to "build an accurate and logical bridge from the evidence" to her credibility determination. *Berger*, 516 F.3d at 544 (internal quotations omitted). This prevents the Court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott*, 297 F.3d at 595. Although the Court does not hold that the ALJ should have found Claimant's allegations fully credible, the foundation underlying her negative assessment was inadequate. Greater elaboration and explanation is necessary to ensure a full and fair review of the evidence. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). On remand, the ALJ should re-evaluate Claimant's subjective symptom statements pursuant to SSR 16-3p, with due regard to the full range of medical evidence; sufficiently articulate how she evaluated that evidence; and then explain the logical bridge from the evidence to her conclusions.

## IV. CONCLUSION

For the reasons discussed in the Court's Memorandum Opinion and Order, Claimant's Motion for Summary Judgment [ECF No. 15] is granted. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: July 24, 2018